

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

CIVIL COMPLAINT

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> v. <br><br> RICHARD RAMBAHAL, PAUL H. KOFTON, JOSEPH J. BARRY, AND MICHAEL LESNIEWSKI <br><br> Defendants. | CASE NO. 04-3086-CV-S-JCE |

## COMPLAINT

Plaintiff, United States Securities and Exchange Commission ("Commission"), alleges the following:

### NATURE OF THE COMPLAINT

1. This action involves three separate fraudulent financial schemes carried out between July 1996 and February 2002 by Richard Rambahal ("Rambahal"), Paul H. Kofton ("Kofton"), Joseph J. Barry ("J. Barry") and Michael Lesniewski ("Lesniewski") (collectively "Defendants"), employees at three subsidiaries of DT Industries Incorporated ("DTI"). During various times between July 1996 and February 2002, the Defendants fraudulently failed to report millions of dollars of costs at each of their

subsidiaries in order to reach projected earnings targets and hide true costs in other accounts by creating false documents. By understating costs these Defendants caused DTI to overstate its consolidated net income by a total of approximately $18 million in its quarterly and annual reports for fiscal years 1997 through the third quarter of fiscal year 2002 that were reported to the investing public and filed with the Commission. The Defendants directly and indirectly have engaged, and unless enjoined, will continue to engage in transactions, acts, practices and courses of business which constitute violations of Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 [15 U.S.C. §§78j(b), 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 CFR §§ 240.10b-5, 240.13b2-1] and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§ 240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

2. Accordingly, the Commission seeks: (a) entry of a permanent injunction prohibiting the Defendants from further violations of the relevant provisions of the federal securities laws; (b) disgorgement, plus prejudgment interest thereon, of the annual bonuses received by Rambahal, Kofton and Lesniewski during the time they committed the frauds alleged herein; and (c) the imposition of civil money penalties against Kofton, J. Barry and Lesniewski due to the egregious nature of their violations.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u and 78aa] and 28 U.S.C. §1331. Venue is proper in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. §78aa].

4. In connection with the transactions, acts, practices and courses of business alleged in this Complaint, each of the Defendants, directly or indirectly, has made use of the means or instrumentalities of interstate commerce and of the mails.

2

5. The transactions, acts, practices and courses of business constituting the violations herein have occurred within the jurisdiction of the United States District Court for the Western District of Missouri and elsewhere.

## DEFENDANTS

6. Defendant Rambahal, age 59, is a citizen of Guyana and resides in Quebec, Canada. At all relevant times Rambahal was the controller of Kalish, Inc. ("Kalish"), a subsidiary of DTI. Among other things, Rambahal was responsible for all accounting functions of Kalish including creating the monthly financial reporting packages Kalish submitted to DTI for DTI's use in preparing its consolidated financial statements.

7. Defendant Kofton, age 57, resides in Plymouth, Massachusetts. At all relevant times Kofton was the controller of Sencorp System, Inc. ("Sencorp"), a subsidiary of DTI. Among other things, Kofton was responsible for all accounting functions of Sencorp including creating the monthly financial reporting packages Sencorp submitted to DTI for DTI's use in preparing its consolidated financial statements.

8. Defendant J. Barry, age 54, resides in Fall River, Massachusetts. At all relevant times J. Barry was the cost accountant of Sencorp. J. Barry reported directly to Kofton and, among other things, was responsible for identifying the costs associated with Sencorp's revenue.

9. Defendant Lesniewski, age 42, resides in Erie, Pennsylvania. At all relevant times Lesniewski was the controller of Assembly Machines Inc. ("AMI"), a subsidiary of DTI. From January 2000 to January 2003, he was also the general manager of AMI. At all relevant times, Lesniewski was responsible for all of AMI's accounting functions including creating the monthly financial reporting packages AMI submitted to DTI for DTI's use in preparing its consolidated financial statements. As AMI's general manager Lesniewski was also responsible for overseeing all functions of the subsidiary.

3

## DT INDUSTRIES, INC.

10. DT Industries, Inc. is a Delaware corporation. Until 2001, DTI's headquarters were located in Springfield, Missouri. In 2001, DTI moved its headquarters to Dayton, Ohio. DTI is a designer and manufacturer of automated production systems used to package, test and manufacture a variety of industrial and consumer products. DTI's stock is registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. §78l(g)] and is listed on the NASDAQ National Market. At all relevant times, DTI consisted of several subsidiaries including Kalish, Sencorp and AMI.

11. During the relevant time period, Kalish, headquartered in Montreal, Canada, was a DTI subsidiary which designed and manufactured liquid filling and tablet packaging systems.

12. During the relevant time period, Sencorp, headquartered in Hyannis, Massachusetts was a DTI subsidiary which designed and manufactured plastics processing equipment and packaging equipment and systems.

13. During the relevant time period, AMI, headquartered in Erie, Pennsylvania, was a DTI subsidiary which designed and manufactured high-speed assembly systems.

## IMPROPER ACCOUNTING ENTRIES

**A. Rambahal's Improper Accounting Entries at Kalish**

14. From July 1996 through June 2000, at Kalish, Rambahal knowingly or recklessly failed to properly recognize costs associated with various projects in order to reach Kalish's projected earnings.

15. At the end of every month, as part of his reporting requirements to DTI, Rambahal reported, among other things, the gross profit margins that Kalish generated. Gross profit margin is used to calculate net income.

16. Gross profit margin is calculated by subtracting the actual cost of

4

producing goods sold, called production costs, from the revenue generated by the sales.

17. Kalish, however, did not have a formal cost accounting system that calculated the actual production costs. Rambahal, therefore, estimated the production costs to calculate Kalish's gross profit margins that he reported to DTI on a monthly basis.

18. At the end of a fiscal year, to determine Kalish's actual production costs Rambahal conducted an inventory count. Rambahal was then supposed to adjust the year-end gross profit margin based on the actual production costs. This adjustment would have caused DTI's annual report to accurately reflect Kalish's net income because it would have been based on actual gross profit margins for the year.

19. Rambahal, however, did not adjust the year-end profit margin to reflect actual production costs. Instead he reported the estimated costs in order for Kalish to reach projected earnings targets. By reporting the estimated costs instead of the actual costs ("unrecorded production costs"), he artificially increased the net income that Kalish reported to DTI for inclusion in its consolidated financial statements.

20. To avoid detection of his scheme, Rambahal hid the unrecorded production costs in various balance sheet accounts that DTI consolidated into its financial statements. As the unrecorded production costs increased, Rambahal moved them around among various asset accounts in a type of "shell game" to keep them hidden as long as possible. Rambahal falsely adjusted various accounts on Kalish's books and records to hide the unrecorded production costs. This resulted in years of misstatements in those accounts and contributed to years of misstatements in DTI's books and records.

21. For some of these false accounting entries, Rambahal created false supporting documentation that concealed the fraud from DTI and DTI's auditors.

22. Rambahal's misstatements caused DTI's annual and quarterly reports for fiscal years 1997, 1998, 1999 and its quarterly reports for fiscal year 2000 to be

materially inaccurate.

23. As a result of Rambahal's fraud, for fiscal year 1997, DTI's annual report overstated DTI's net income by $1.6 million or 6%. For fiscal year 1998, as a result of Rambahal's fraud, DTI's annual report overstated its net income by $4.0 million or 13%. For fiscal year 1999, as a result of Rambahal's fraud, DTI's annual report understated DTI's net loss by $3.4 million or 191%. For the first quarter of fiscal year 2000, as a result of Rambahal's fraud, DTI's quarterly report understated its net loss by $720,000 or 213%. For the second quarter of fiscal year 2000, as a result of Rambahal's fraud, DTI's quarterly report overstated its net income by $1.3 million or 144%. For the third quarter of fiscal year 2000, as a result of Rambahal's fraud, DTI's quarterly report overstated its net income by $1.8 million or 65%.

24. As a result of his misconduct Rambahal received approximately $19,400 in annual bonuses which were based on, among other factors, DTI's overstated financial results.

25. In October of 2000, DTI terminated Rambahal because of his conduct described in this Complaint.

### B. Kofton and J. Barry's Improper Accounting Entries at Sencorp

26. From July 1999 through June 2000, Kofton, J. Barry and the general ledger accountant at Sencorp, in order to reach projected earnings, knowingly or recklessly failed to properly recognize costs associated with various projects and recorded improper accounting entries that inflated Sencorp's gross profits. The false gross profits were then consolidated into DTI's financial statements.

27. Although Sencorp implemented an automated operating system to track actual production costs for its manufacturing projects, the automated operating system did not record production costs accurately. Rather than thoroughly address and correct the automated operating system's problems, Kofton ignored the incorrect production

6

costs generated by the automated operating system.

28. Instead, Kofton directed J. Barry to manually reduce the production costs in Sencorp's general ledger in order for Sencorp to reach projected earnings targets.

29. To avoid detection of this scheme, Kofton attempted to conceal the unrecognized production costs. Kofton first hired an outside consultant to create a computer program that artificially added costs to unfinished projects. Sencorp's project management personnel, however, immediately questioned this sudden increase in costs associated with their projects. As a result, Kofton was forced to reverse the program to avoid his scheme from being uncovered.

30. Next, Kofton instructed J. Barry and the general ledger accountant to create and enter fictitious work orders into Sencorp's automated operating system. This resulted in the creation of approximately 48 fictitious work orders valued at approximately $4 million with no links to any actual projects. These fictitious work orders had the effect of concealing the production costs that Kofton failed to report and allowed the scheme to continue undetected.

31. Kofton, J. Barry and the general ledger accountant's scheme resulted in an understatement of Sencorp's costs of sales which resulted in, during various periods, material overstatements of the net income and understatements of the net loss that Sencorp reported to DTI for inclusion in DTI's quarterly reports for fiscal year 2000.

32. As a result of Kofton's and J. Barry's fraud, for the first quarter of fiscal year 2000, DTI's quarterly report understated DTI's net loss by $1 million or 311%. As a result of Kofton and J. Barry's fraud, for the second quarter of 2000, DTI's quarterly report overstated DTI's net income by $412,000 or 47%. As a result of Kofton and J. Barry's fraud, for the third quarter of 2000, DTI's quarterly report overstated DTI's net income by $244,000 or 9%.

33. As a result of his misconduct, Kofton received approximately $9,600 in

7

annual bonuses which were based on, among other factors, DTI's overstated financial results.

34. In October 2000, DTI terminated Kofton because of his conduct described in this Complaint.

C. **Lesniewski's Improper Accounting Entries at AMI**

35. From July 1998 through February 2002, Lesniewski, AMI's controller, knowingly or recklessly failed to properly recognize costs associated with various projects in order to reach AMI's projected earnings.

36. For this time period, Lesniewski was responsible for all of AMI's accounting functions, including creating the monthly financial reporting packages AMI submitted to DTI for DTI's use in preparing its consolidated financial statements.

37. For nearly four years, Lesniewski manipulated AMI's books and records in order for AMI to reach projected earnings targets.

38. Lesniewski understated AMI's cost of sales by failing to recognize all of AMI's actual production costs for certain projects. By not recognizing the actual production costs for these projects, Lesniewski artificially increased AMI's profit margin. As a result, he reported materially misstated net income and net loss figures for inclusion in DTI's consolidated financial statements.

39. Lesniewski hid these unrecognized production costs in an asset account which was comprised of various sub-accounts. The sub-accounts were supposed to reflect, among other things, labor and parts costs associated with projects that were in the process of being built and payments received from customers and invoices sent out to customers for ongoing projects.

40. The actual sub-account figures were reported to Lesniewski which he, in turn, was supposed to use in reporting AMI's books and records to DTI. However, Lesniewski ignored the actual numbers and instead used artificial numbers which allowed

8

him to hide the costs of sales that he understated.

41. The effect of Lesniewski's improper entries on AMI's books was to understate cost of sales thereby resulting in both material overstatements of DTI's consolidated net income and material understatements of DTI's consolidated net losses in various periods in its quarterly and annual reports for fiscal years 1999, 2000 and 2001 and its quarterly reports for fiscal year 2002.

42. As a result of Lesniewski's fraud, for fiscal year 1999, DTI's annual report understated its net loss by $1.4 million or 27%. As a result of Lesniewski's fraud, for fiscal year 2000, DTI's annual report understated its net loss by $863,000 or 18%. As a result of Lesniewski's fraud, for fiscal year 2001, DTI's annual report understated its net loss by $1.7 million or 2.4%. As a result of Lesniewski's fraud, for the first quarter of fiscal year 2002, DTI's quarterly report overstated its net income by $250,000 or 29%. As a result of Lesniewski's fraud, for the second quarter of fiscal year 2002, DTI's quarterly report understated its net sales by $560,000 and overstated its net loss by $200,000 or 18%. As a result of Lesniewski's fraud, for the third quarter of fiscal year 2002, DTI's quarterly report understated its net loss by $142,000 or 1%.

43. As a result of his misconduct Lesniewski received approximately $45,800 in annual bonuses which were based on, among other factors, DTI's overstated financial results.

44. Lesniewski resigned from DTI before the accounting irregularities at AMI were uncovered.

**D.     Effect on DTI's Consolidated Financial Statements**

45. As a result of the Defendants' fraudulent schemes, DTI twice restated its financial statements, first in October 2000 and again in August 2002.

46. The first restatement was required after Rambahal's scheme at Kalish and Kofton's, J. Barry's and the general ledger accountant's scheme at Sencorp were

9

discovered. Their combined fraudulent conduct caused DTI to overstate its net income and understate its net losses for fiscal years 1997, 1998 and 1999 and for the first three quarters of fiscal year 2000. For fiscal year 1997, the annual report contained an overstatement of net income by $1.6 million or 6%, and an overstatement in diluted earnings per share by $0.15. For fiscal year 1998, the annual report contained an overstatement of net income by $4.0 million or 13%, and an overstatement in diluted earnings per share by $0.30. For fiscal year 1999, the annual report contained an understatement of net loss by $3.4 million or 191%, and an understatement in diluted net loss per share by $0.34. For the first quarter of fiscal year 2000, the quarterly report contained an understatement of net loss by $1.8 million or 532%, and an understatement in diluted net loss per share by $0.18. For the second quarter, the quarterly report contained an overstatement of net income by $1.7 million or 201%, and an overstatement in diluted earnings per share by $0.18. For the third quarter the quarterly report contained an overstatement of net income by $1.6 million or 60%, and an overstatement in diluted earnings per share by $0.16. Following the announcement of the restatement, DTI's share price dropped 57%.

47. The second restatement was the result of Lesniewski's scheme at AMI. Lesniewski's fraudulent conduct caused DTI to further overstate its net income and understate its net losses in various periods in its fiscal years 1999, 2000, 2001 and the first three quarters of fiscal year 2002 financial statements. The amounts of these overstatements of net income and understatements of net losses are detailed in paragraph 42 above.

## COUNT I

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 CFR 240.10b-5] Promulgated Thereunder**

48. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

49. Defendants Rambahal, Kofton, J. Barry and Lesniewski knew or should have known of the activities described in paragraph 48.

50. At various times between July 1996 and at least February 2002, as specifically alleged in paragraphs 48 through 49 above, Rambahal, Kofton, J. Barry and Lesniewski in connection with the purchase or sale of securities, directly or indirectly, by the use of means and instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange: employed devices, schemes or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon purchasers or sellers of securities.

51. As a result of the activities described in paragraphs 48 through 50 above, Defendants Rambahal, Kofton, J. Barry and Lesniewski violated Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 [17 CFR 240.10b-5] promulgated thereunder.

## COUNT II

**Violations of Section 13(b)(5) of the Exchange Act [15 U.S.C. 78m(b)(5)]**

52. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

53. At various times between July 1996 and at least February 2002, as specifically alleged in paragraph 52 above, Rambahal, Kofton, J. Barry and Lesniewski knowingly circumvented or knowingly failed to implement a system of internal accounting controls and knowingly falsified books, records and accounts described in Section 13(b)(2) of the Exchange Act [15 U.S.C. 78m(b)(2)].

54. As a result of the activities described in paragraphs 52 through 53 above, Rambahal, Kofton, J. Barry and Lesniewski violated Section 13(b)(5) of the Exchange Act [15 U.S.C. §78m(b)(5)].

## COUNT III

### Violations of Exchange Act Rule 13b2-1 [17 CFR 240.13b2-1]

55. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

56. At various times between July 1996 and at least February 2002, as specifically alleged in paragraph 55 above, Rambahal, Kofton, J. Barry and Lesniewski, directly and indirectly, falsified or caused to be falsified books, records and accounts subject to Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §78m(b)(2)(A)].

57. As a result of the activities described in paragraphs 55 through 56 above, Rambahal, Kofton, J. Barry and Lesniewski, violated Rule 13b2-1 [17 CFR 240.13b2-1] promulgated under Section 13(b)(2) of the Exchange Act [15 U.S.C. 78m(b)(2)].

## COUNT IV

### Aiding and Abetting Violations of Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR. §§240.12b-20, 240.13a-1 and 240.13a-13] Promulgated Thereunder

58. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

59. The financial statements that DTI filed with the Commission in its Forms

12

10-K and Forms 10-Q for fiscal years 1997 through the third quarter of fiscal year 2002 were not prepared in accordance with Generally Accepted Accounting Principles (GAAP) and contained material misstatements.

60. At various times between July 1996 and at least February 2002, as specifically alleged in paragraphs 58 through 59, DTI, aided and abetted by Rambahal, Kofton, J. Barry and Lesniewski, directly and indirectly, filed with the Commission quarterly reports on Forms 10-Q and annual reports on Forms 10-K for fiscal years 1997 through the third quarter of fiscal year 2002 that were not in accordance with such rules and regulations that the Commission has prescribed as necessary and appropriate in the public interest and for the protection of investors and also failed to include in those reports such further material information as was necessary to make the required statements, in light of the circumstances under which they were made, not misleading.

61. Rambahal, Kofton, J. Barry and Lesniewski knowingly provided substantial assistance to DTI in the activities alleged in paragraphs 58 through 60 above.

62. By reason of the activities alleged in paragraphs 58 through 61 above, DTI violated Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] promulgated thereunder.

63. As a result of the activities alleged in paragraphs 58 through 62 above, Rambahal, Kofton, J. Barry and Lesniewski aided and abetted DTI's violations of Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)] and Rules 12b-20, 13a-1, and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] promulgated thereunder.

## COUNT V

**Aiding and Abetting Violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §78m(b)(2)(A)]**

64. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

65. At various times between July 1996 and at least February 2002, as specifically alleged in paragraph 64, DTI, aided and abetted by Rambahal, Kofton, J. Barry and Lesniewski, directly and indirectly, failed to make and keep books, records and accounts, which in reasonable detail accurately and fairly reflected the transactions and dispositions of DTI's assets.

66. Rambahal, Kofton, J. Barry and Lesniewski knowingly provided substantial assistance to DTI in the activities alleged in paragraphs 64 through 65 above.

67. By reason of these activities described in paragraphs 64 through 66 above, DTI violated Sections 13(b)(2)(A) of the Exchange Act [15 U.S.C. §78m(b)(2)(A)].

68. As a result of the activities described in paragraphs 64 through 67 above, Rambahal, Kofton, J. Barry and Lesniewski aided and abetted DTI's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. §78m(b)(2)(A)].

## COUNT VI

**Aiding and Abetting Violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §78m(b)(2)(B)]**

69. Plaintiff realleges paragraphs 1 through 47 and incorporates them by reference as if set forth fully herein.

70. At various times between July 1996 and at least February 2002, as specifically alleged in paragraph 69, DTI, aided and abetted by Rambahal, Kofton, J. Barry and Lesniewski, directly and indirectly, failed to devise and maintain a system of adequate internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with Generally Accepted Accounting Principles (GAAP) or any other criteria applicable to such statements.

71. Rambahal, Kofton, J. Barry and Lesniewski knowingly provided substantial assistance to DTI in the activities alleged in paragraphs 69 through 70 above.

14

72. By reason of these activities described in paragraphs 69 through 71 above, DTI violated Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §78m(b)(2)(B)].

73. As a result of the activities described in paragraphs 69 through 72 above, Rambahal, Kofton, J. Barry and Lesniewski aided and abetted DTI's violations of Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. §78m(b)(2)(B)].

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

Issue findings of fact and conclusions of law that the Defendants committed the violations charged and alleged herein.

### II.

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently retraining and enjoining Defendant Rambahal, his officers, agents, servants, employees, attorneys, assigns and all persons in active concert or participation with them who receive actual notice of the Order of Permanent Injunction, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices and courses of business described above, or in conduct of similar purport or object, in violation of Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 CFR §§ 240.10b-5 and 240.13b2-1] and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

### III.

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently retraining and enjoining Defendant

15

Kofton, his officers, agents, servants, employees, attorneys, assigns and all persons in active concert or participation with them who receive actual notice of the Order of Permanent Injunction, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices and courses of business described above, or in conduct of similar purport or object, in violation of Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 CFR §§ 240.10b-5 and 240.13b2-1] and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

### IV.

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently retraining and enjoining Defendant J. Barry, his officers, agents, servants, employees, attorneys, assigns and all persons in active concert or participation with them who receive actual notice of the Order of Permanent Injunction, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices and courses of business described above, or in conduct of similar purport or object, in violation of Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 CFR §§ 240.10b-5 and 240.13b2-1] and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

### V.

Issue an Order of Permanent Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently retraining and enjoining Defendant

Lesniewski, his officers, agents, servants, employees, attorneys, assigns and all persons in active concert or participation with them who receive actual notice of the Order of Permanent Injunction, by personal service or otherwise, and each of them from, directly or indirectly, engaging in the transactions, acts, practices and courses of business described above, or in conduct of similar purport or object, in violation of Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 CFR §§ 240.10b-5 and 240.13b2-1] and aiding and abetting violations of Sections 13(a), 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 12b-20, 13a-1 and 13a-13 [17 CFR §§240.12b-20, 240.13a-1 and 240.13a-13] thereunder.

## VI.

Issue an Order requiring Rambahal to pay disgorgement of $12,000, plus prejudgment interest, related to his fiscal years 1997, 1998 and 1999 DTI performance-based bonuses.

## VII.

Issue an Order requiring Kofton to pay disgorgement of $9,600, plus prejudgment interest, related to his fiscal year 2000 DTI performance-based bonus.

## VIII.

Issue an Order requiring Lesniewski to pay disgorgement of $45,800 plus prejudgment interest, related to his fiscal year 2000 and 2001 DTI performance-based bonuses.

## IX.

Issue an Order imposing appropriate civil penalties upon Defendants Kofton, J. Barry and Lesniewski pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. §78u(d)(3)].

## X.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

## XI.

Grant Orders for such further relief as the Court may deem appropriate.

Respectfully submitted,

Steven L. Klawans
One of the Attorneys for Plaintiff
U.S. SECURITIES AND
EXCHANGE COMMISSION
175 West Jackson Boulevard
Chicago, Illinois 60604
Telephone: (312) 886-1738
Facsimile: (312) 353-7398
E-mail: KlawansS@sec.gov

Illinois Bar No.: 6229593


Local Counsel
Earl W. Brown III
Assistant United States Attorney
United States Attorney's Office for the
    Western District of Missouri
Hammons Tower, Suite 500
901 St. Louis
Springfield, MO 65806-2511
Telephone: (417) 831-4406
Facsimile: (417) 831-0078

Dated: March 3, 2004